**Johnny Fain MEEKS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–94–126–CR.**

Court of Appeals of Texas,
Fort Worth.

May 4, 1995.

---

William K. Clary, Clary & Clements, Inc., Bridgeport, for appellant.

Barry S. Green, Dist. Atty., Lindy Borchardt, Asst. Dist. Atty., Decatur, for appellee.

Before CAYCE, C.J., LIVINGSTON, J., and PATRICE M. BARRON, J., Sitting By Assignment.

## OPINION

BARRON, Justice.

Appellant, Johnny Fain Meeks, was convicted by a jury of the offense of aggravated sexual assault. *See* TEX.PENAL CODE ANN. § 22.021(a) (Vernon 1994). The court assessed punishment at twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In six points of error, Meeks contends that: (1)– (2) the trial court erred in admitting a handwritten confession into evidence; (3)–(4) there is insufficient evidence to support the verdict; and (5)–(6) the trial court erred in overruling Meeks' objection to the charge and allowing the jury to reconvene to rehear

a portion of the complainant's testimony. Finding no reversible error on any of these grounds, we affirm.

During the summer months of 1993, Johnny Meeks and his wife agreed to babysit the complainant, then a nine-year-old girl, while her mother was at work. In early June, the complainant's family was in the process of moving into a new home. On June 15, while her mother was at work, the complainant accompanied Meeks to the home to pick up a set of keys. While at the house, Meeks asked the complainant to undress. Meeks then fondled the complainant's breasts and inserted his penis into her mouth and vagina. Later that same day, Neil Berry, M.D., performed a genital exam on the complainant and found evidence of vaginal inflammation consistent with possible penile penetration. Meeks was arrested the next day and indicted for aggravated sexual assault.

In his first and second points of error, Meeks contends the trial court erred in admitting into evidence a hand-written confession obtained in violation of his right to counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, article I, sections 10 and 19 of the Texas Constitution, and article 38.22 of the Texas Code of Criminal Procedure.[1]

Meeks filed a pretrial motion to suppress the confession. In response, the trial court conducted a pretrial hearing as required by *Jackson v. Denno.*[2] After the hearing, the trial court determined that the confession was given voluntarily and that it was admissible. The trial court also found that at no time prior to Meeks signing the confession did he ever request the presence of an attorney or in any manner invoke his right to counsel. The trial court then denied Meeks' motion to suppress and admitted the confession in evidence before the jury.

---

1. In his brief, Meeks fails to provide either argument or authority to support a violation of his rights under article I, sections 10 and 19 of the Texas Constitution. We therefore decline to address those asserted rights. *See Heitman v. State,* 815 S.W.2d 681, 690–91 n. 23 (Tex.Crim.App. 1991); *DeBlanc v. State,* 799 S.W.2d 701 (Tex.

Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991).

2. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Several witnesses testified at the suppression hearing. Mark Peterson, an investigator with the Jack and Wise County District Attorney's Office, testified that his first contact with Meeks was at the Jack County Sheriff's Department on the evening of June 16, 1993. At that meeting, Peterson first identified himself and immediately advised Meeks of his *Miranda*[3] rights, including his right to counsel. Meeks then agreed to waive those rights and signed a pre-printed waiver form. Afterwards, Peterson discussed the complainant's allegations and asked if Meeks wanted to give his own version of the story. Meeks gave an oral statement to Peterson, which he subsequently reduced to writing. Before hand-writing the confession, Meeks read the *Miranda* warnings on a pre-printed Voluntary Statement form. As he read, Meeks placed his initials beside each individual warning to acknowledge his waiver. Meeks then composed his own version of the incident in the space provided on the form. The statement was then witnessed by Officer Rick O'Donnell of the Jacksboro Police Department. In Officer O'Donnell's presence, Peterson and Meeks reviewed the various forms, with emphasis on the *Miranda* warnings, and Meeks once again initialed each warning as it was read. At some point, Meeks complained that he had trouble hearing over the noise of an air conditioner in the room; so Officer O'Donnell turned the unit off and the *Miranda* warnings were reviewed again. In all, Meeks was advised of his rights no fewer than five times before signing the confession. Officer O'Donnell's testimony confirmed that Meeks was advised numerous times about his rights and that he appeared to understand them. Officer O'Donnell also affirmed that no promises of any kind nor any threats were made.

■ Prior to giving his confession, Meeks inquired about potential punishment in this type of case and whether he would be eligible for probation. In response, Peterson explained that Meeks could possibly receive five to ninety-nine years and up to a $10,000 fine. Peterson also gave his opinion that Meeks could not receive probation for aggravated sexual assault.[4] Meeks now argues that his desire for "legal" advice was tantamount to an assertion of his right to counsel and that Peterson's failure to end the interrogation tainted the confession.

■ An accused who expresses a desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel is made available, unless the accused himself initiates further communications, exchanges, or conversations with the police. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 386 (1981); *Smith v. State,* 779 S.W.2d 417, 425 (Tex.Crim.App.1989). Therefore, our initial inquiry is whether the accused actually invoked his right to counsel. *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). We measure the actions of the accused by the totality of the circumstances. *Collins v. State,* 727 S.W.2d 565, 568 (Tex.Crim.App.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 244 (1987). If we determine that Meeks invoked his right to counsel, we must next determine whether he initiated further discussion with the police and if so, whether he knowingly and intelligently waived his asserted right. *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). If both steps are met, the confession is admissible.

■ Just as the mere mention of the word "attorney" or "lawyer," without more, does not automatically invoke the right to counsel, *see Robinson v. State,* 851 S.W.2d 216, 223–24 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994), we question whether asking for "legal" advice, instead of an attorney, warrants automatic invocation of that same right. However, even if we assume that Meeks' inquiries would normally invoke his right to counsel, we believe he knowingly and intelli-

---

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. At that time, Meeks had actually not yet been indicted.

gently waived that right. Meeks signed a waiver of rights form before any interrogation took place. That form stated:

I have the right to remain silent and not make any statement at all and that any statement I make may be used against me at my trial; that any statement I make may be used as evidence against me in court; *that I have the right to have a lawyer present to advise me prior to and during any questioning; that if I am unable to hire a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning;* and, I have the right to terminate any interview at any time during the interview. [Emphasis added.]

The record also shows that Meeks was informed of these same rights at least five times prior to his signing the hand-written confession, including after he asked Peterson about the punishment range and probation eligibility for an aggravated sexual assault offense. Meeks clearly understood these rights and chose to waive them.

■ Meeks did not testify at the suppression hearing. Therefore, the only account of the interrogation was provided by Peterson and Officer O'Donnell. At a suppression hearing, the trial court is the sole judge of the credibility of witnesses and the weight to be given to the testimony. *Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App.1991). The trial court may believe or disbelieve all or any part of a witness' testimony, and absent an abuse of discretion, we will not disturb its findings on appeal. *Id.* In light of Meeks' knowing and voluntary waiver of his right to counsel, the trial court did not abuse of discretion in finding Meeks' confession admissible.

■ Meeks further contends the trial court violated article 38.22 of the Texas Code of Criminal Procedure when it admitted the confession because the State failed to prove Meeks knowingly and intelligently waived his right to counsel. *See* TEX.CODE CRIM.PROC. ANN. art. 38.22, § 2(b) (Vernon 1979). As we stated above, the interrogating officer testi-

fied that he advised Meeks on numerous occasions of his right to counsel, Meeks signed the waiver form and twice placed his initials beside each warning, and Meeks was further advised of his rights in the presence of another officer before signing the confession. We hold this evidence sufficient beyond a reasonable doubt to support the trial court's finding during the pretrial suppression hearing that Meeks knowingly and intelligently waived his right to counsel before giving the confession. Points of error one and two are overruled.

■ In his third and fourth points of error, Meeks contends there is insufficient evidence to support his conviction for aggravated sexual assault. Meeks first argues that the State failed to prove proper venue, *i.e.,* that the offense occurred in Jack County, Texas.

According to TEX.R.APP.P. 80(d), courts of appeals shall presume that venue was proved in the trial court, unless the matter was made an issue in the court below, or it otherwise affirmatively appears to the contrary from the record. Meeks failed to raise the issue of venue at trial and we find no affirmative evidence in the record to the contrary. The complainant testified that the offense occurred at her "old grandma's house" where she was living at the time. The complainant's family was in the process of moving to a home at 312 Jack Street in Jack County, Texas, just two blocks from their former trailer home. In fact, on the date of the offense, the family actually spent the night at the new house. Meeks likewise confessed to molesting the complainant at what he described as the "new" house. Finally, Peterson testified that he obtained evidence of the assault from the house on Jack Street. We hold this evidence sufficient to prove that the offense occurred in Jack County, Texas.

■ Meeks further complains there is insufficient evidence to support his conviction in the absence of an in-court identification of him as the perpetrator of the offense. Evidence of identity can be proven by either

direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex.Crim.App. 1986); *Oliver v. State*, 613 S.W.2d 270, 274 (Tex.Crim.App. [Panel Op.] 1981) (op. on reh'g). The complainant testified that a babysitter named "Johnny" sexually assaulted her. The complainant's mother also testified that Johnny Meeks and his wife were in charge of babysitting the complainant and positively identified "Johnny" as Johnny Meeks at trial. Further, Meeks' confession states that he engaged in sexual acts with a girl named "[A]," the complainant's common name. In addition, the State introduced a medical report into evidence, *without objection*, which identifies the perpetrator of the "sexual molestation" as "Johhny [sic] Meeks." The fact that the complainant failed to identify Meeks at trial goes only to the weight and credibility of the witnesses and was before the jury for their consideration. *See Earls*, 707 S.W.2d at 85. We hold there is sufficient evidence that Meeks was the perpetrator. Points of error three and four are overruled.

■ In his fifth point of error, Meeks contends the trial court erred in overruling his objection to the jury charge. Meeks argues that the charge as submitted allowed the jury to convict him based on conduct not alleged in the indictment.

Meeks' complaint centers on the following language from the charge:

A person commits the offense of aggravated sexual assault if he intentionally or knowingly

1. Causes the penetration of the female sexual organ of a child by any means; or

2. Causes the penetration of the mouth of the child by the sexual organ of the actor . . . .

At trial, Meeks objected to this portion of the charge on the basis that "by any means" should instead read "by the sexual organ of the actor" because the indictment itself alleged penetration by Meeks' penis. Meeks argues that the language in the charge served only to confuse the jury, evidenced by

a jury note asking the trial court: "Are we ruling by any means or ruling on insertion of male penis into female sex organ or both[?]"

Based on the manner and means alleged in the indictment, the State was obligated to prove sexual assault by penile penetration. *See Everage v. State*, 848 S.W.2d 357 (Tex. App.—Austin 1993, no pet.). In fact, the State's burden was clearly articulated in the application paragraph in the charge which permitted conviction only if the jury found evidence of penile penetration of either the complainant's mouth or vagina. In the absence of this application paragraph, Meeks' argument might merit reversal. *See Williams v. State*, 622 S.W.2d 578 (Tex.Crim. App. [Panel Op.] 1981). However, no reversible error is present in the instant case because the charge properly restricted the jury's consideration to the allegations contained in the indictment. *See Grady v. State*, 614 S.W.2d 830, 831 (Tex.Crim.App. [Panel Op.] 1981); *Earls v. State*, 650 S.W.2d 858, 863 (Tex.App.—Houston [14th Dist.] 1982), *aff'd*, 707 S.W.2d 82 (Tex.Crim.App.1986). Point of error five is overruled.

■ In his sixth and final point of error, Meeks contends the trial court violated article 36.28 of the Texas Code of Criminal Procedure by reconvening the jury and allowing the court reporter to read a portion of the complainant's testimony.

During its deliberations, the jury sent out a note inquiring, "Could we get a copy of [A's] statement[?]" In turn, the trial court informed the jury that it could not comply with the request. The jury foreman then sent a second note asking, "Could we have [the complainant's] testimony as recorded on 1–18–94[?]" The trial court responded once again as follows:

Members of the Jury:

Your request is governed by the following rule:

"If the jury disagree as to the statement of any witness, they may, upon applying to the Court, have read to them from the Court Reporter's notes that part of such

witness' testimony on the point in dispute."

If you report that you disagree concerning the statement of a witness and specify the point in which you disagree, the Court Reporter will search his notes and read to you the testimony of the witness on the point.

/s/ —————————————
JUDGE PRESIDING

The foreman later sent a fourth noted that stated, "We want to hear what [the complainant] said in her testimony the description of exactly what ~~the~~ Johnny physically did to her while in the house from the court reporter's notes." Meeks objected to this last note on the basis that the jury had not certified there was a dispute among them as to that particular portion in the testimony. The trial court overruled Meeks' objection and allowed the testimony read to the jurors.

■■■ Where the jury requests evidence during deliberations, the trial court must determine whether the request is in compliance with article 36.28 of the Texas Code of Criminal Procedure. *Robison v. State,* 888 S.W.2d 473, 480 (Tex.Crim.App.1994) (citing *Iness v. State,* 606 S.W.2d 306, 314 (Tex.Crim.App. 1980)), *petition for cert. filed,* —— U.S.L.W. —— (U.S. March 21, 1995) (No. 94–8365). Article 36.28 provides that "if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other...." TEX.CODE CRIM.PROC.ANN. art. 36.28 (Vernon 1981). The manner in which the trial court determines whether there is a factual dispute between the jurors is left to its sound discretion. *Robison,* 888 S.W.2d at 480. *See also, Jones v. State,* 706 S.W.2d 664, 668 (Tex. Crim.App.1986); *Thrash v. State,* 482 S.W.2d 213, 214 (Tex.Crim.App.1972). However, a simple request for testimony, without more, is not an indication of implicit disagreement. *Moore v. State,* 874 S.W.2d 671, 674 (Tex. Crim.App.1994).

Meeks relies on *Moore* for the proposition that the trial court's failure to ascertain whether the jury disagreed as to the complainant's testimony constituted reversible error. We find *Moore* distinguishable in several respects and believe the more recent pronouncement from the court of criminal appeals in *Robison* is on point. In *Robison,* as in the instant case, there were three separate requests made by the jury in determining whether a dispute existed, each becoming increasingly narrow in scope. *See Robison,* 888 S.W.2d at 480. In addition, the trial court in *Robison,* as in this case, informed the jury that testimony would be read back only in the event of a dispute. *See id.* Therefore, considering the last note requesting testimony in conjunction with prior notes from the jury and the corresponding instructions from the trial court, it was not unreasonable to infer a disagreement among the jury regarding the complainant's testimony. We therefore hold the trial court, in this instance, did not abuse its discretion in permitting certain testimony be given to the jurors. *See id.* at 481. Point of error six is overruled.

The judgment of the trial court is affirmed.